**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY**

_____

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) | Case No. 5:23-MJ-5024-MAS  **Filed Under Seal** |

_____

**APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)**

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this ex parte application for an order pursuant to 18 U.S.C. § 2703(d).  The proposed order would require **Zoom Video Communications, Inc. ("Zoom")**, a technology company and provider of electronic communication and/or remote computing services, headquartered at **55 Almaden Blvd., 6th Floor, San Jose, California 95113**, to disclose certain historical records and other non-content information pertaining to or associated with (1) certain identifiers believed to be used by Zoom users, customers, subscribers, or accounts, and (2) Zoom meetings, calls, and other communications forums, all of which is further described in Part I of Attachment A.  The historical records and other non-content information to be disclosed are described in Part II of Attachment A to the proposed court order.  This application also requests, as set forth more fully below, that this Court's orders and this application be sealed until further notice of this Court.  In support of this application, the United States asserts:

## LEGAL BACKGROUND

1. **Zoom** is a provider of electronic communications services, as defined in 18 U.S.C. § 2510(15), and/or remote computing services, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require **Zoom** to disclose historical records and other non-content information described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2); 18 U.S.C. § 2703(c)(1).

2. Applicant is an "Attorney for the government" as defined by Federal Rule of Criminal Procedure 1(b)(1)(B) and, therefore, may apply for orders requesting the specified relief pursuant to 18 U.S.C. § 2703(d) (records concerning electronic communications).

3. This Court has jurisdiction to issue the requested order because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. *See* 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

4. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." *See* 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the historical records and other non-content information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

5. The requested historical records and other non-content information should be readily accessible to **Zoom** and its production is not anticipated to be overly burdensome.

## **FACTUAL BACKGROUND**

6. The United States is investigating James William Turner of Lexington, Kentucky for possible violations of 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B), including the access with intent to view, possession, and receipt of child pornography, as well as conspiracies to commit these offenses.

7. Around March 29, 2021, an FBI Online Covert Employee ("OCE") was connected to the Internet in an online undercover capacity and accessed an online chatting application (the "Chat Application"). The Chat Application is a free mobile application that can be downloaded on computers and mobile devices, including Apple iOS and Android devices. It permits users to anonymously send text messages, videos, images, and other content using end-to-end encryption. The Chat Application allows users to create groups to exchange messages and files with other users of the application.

8. While using this Chat Application, the OCE had infiltrated various groups that were dedicated to child pornography, also known as "child sexual abuse material" or "CSAM." One such group on the Chat Application was titled "Nepirape." The term "nepi," as used by child sex offenders or CSAM consumers, refers to a sexual interest in infants and toddlers. This group was dedicated to sharing CSAM of children 4 years of age or younger. The group had the following description under its name "Only 0 to 4."

9. The OCE observed numerous CSAM files being shared by users in this group. Around March 29, 2021, the OCE observed a user in the group share a link for a Zoom meeting (the "Subject Meeting"). As noted above, Zoom is an online communications platform that permits users to engage in video chat with one another, including in groups. Zoom also permits users to share their screens, so that participants in a particular Zoom

meeting are able to view the screens of other users. The link included a long string of seemingly randomly generated letters and numbers. The OCE accessed the link and as it was being launched, a window for a video preview appeared and provided the OCE with an option to join the Subject Meeting with or without video. The OCE selected the option to enter without video. Once the Subject Meeting was fully viewable, an additional window appeared to request whether to join with computer audio. The OCE selected to disable this feature.

10. After entering the Subject Meeting through the link described above, the OCE observed that one of the participants in the meeting was sharing his screen through the share-screen function and was streaming CSAM videos to the other participants. The CSAM videos generally depicted the sexual abuse of young boys who mostly appeared to be prepubescent and approximately between the ages of 5-10.

11. Many of the participants in the Subject Meeting appeared to have their cameras turned on and were visible through a series of small windows on the side of the screen. A number of the participants whose cameras were on could be seen fully or partially naked, and some of them were visibly masturbating. Many of the display names included the word "perv." Additionally, there was also a chat function within the meeting that allowed the users to communicate with each other. Some of the public comments that were viewable by the OCE throughout the recording included what appeared to be commentary on the streamed CSAM, including "nice boyfuck" "loove being pedo," "great asian boy," "rapeehimm," "rape and no dirty dick?" "I wana feel a boy," and "Just look how much bigger the pedoi is compared to the boy!" During the Subject Meeting, approximately 50-70 participants were observed.

12. One particular participant in the Subject Meeting (the "Target User") was an individual with the display name "Brutus666pig". The Target User had his camera on and was first visible in the participant window on the right-hand side of the screen around 01:09 seconds of the session that was recorded by the OCE. At the time the Target User first appeared on the OCE's recording, the video that was streaming to participants through the screen-share function depicted two fully nude, prepubescent boys engaging in anal sex between the ages of 5-10. There were also several other prepubescent children observed who were fully nude and watching the two children engaging in anal sex. Target User was seen on camera with his face fully visible. The user appeared to be laying in a bed with a white pillow. A window in the background can also be seen. The user was a white male with little to no hair on his head and had a white beard. Pursuant to legal process by the FBI to Zoom seeking information about the participants in the Subject Meeting during the time the OCE was present and recording, Zoom provided information about the users, including the following information for the Target User:

    Username: Brutus666pig

    External IP: 107.77.232.236:37236

13. The results from the legal process served on Zoom relating to the Subject Meeting revealed that user Brutus666pig logged in to this Zoom room from the following IP address on the dates and times specified: 107.77.232.236 on March 29, 2021 join time 18:45:39:336 through leave time 18:59:24:194.

14. A query of the American Registry for Internet Numbers ("ARIN") online database revealed that IP address 107.77.232.236 was registered to AT&T.

15. On July 2, 2021, pursuant to legal process for IP address 107.77.232.236, AT&T stated "provided the following as the subscriber information and address: No records found. This was most likely due to the fact that 107.77.232.236 was a cellular IP address and AT&T does not retain records associated to cellular IP addresses.

16. Open source research conducted on the username Brutus666pig revealed the following social media accounts with the same username:

    https://www.instagram.com/brutus666pig

    https://ws2.kik.com/user/brutus666pig

    https://mewe.com/i/jimturner29

17. Analysis of these accounts revealed that the user's name was likely "Jim Turner" and associated with the city "Lexington."

18. Further research on "Jim Turner" in "Lexington" utilizing law enforcement databases located James William Turner, date of birth: 06/12/1961, Driver's License number: T93588143, social security account number: 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, at address 2457 Butternut Hill Court, Lexington, KY 40509.

19. A comparison between the photographs observed in the above social media accounts and a Driver's License photograph of James William Turner of 2457 Butternut Hill Court, Lexington, KY resulted in a positive facial match to that of the user seen as Brutus666pig in the Zoom video.

### REQUEST FOR ORDER

19. The facts set forth in the previous section show that there are reasonable grounds to believe that the historical records and other non-content information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically,

these items will help the United States to (1) determine the nature and scope of Turner's communications and criminal activity, (2) identify additional sources of evidence, and (3) identify and locate any coconspirators and confederates and determine the nature and scope of their activities and or frequency of their communications. Accordingly, the United States requests that **Zoom** be directed to produce all items described in Part II of Attachment A to the proposed order.

## REQUEST FOR NON-DISCLOSURE

20. The United States further requests the proposed § 2703(d) order require **Zoom** not to notify any other person, including the subscribers or customers of the account(s) listed in Part I of Attachment A or the participants in the meetings listed in Part I of Attachment A, of the existence of the § 2703(d) order for a time period of one year (or twelve months) from the date of the proposed order. *See* 18 U.S.C. § 2705(b).

21. This Court may issue an order, pursuant to 18 U.S.C. § 2705(b), commanding a provider of electronic communications or remote computing services from notifying the subscriber or customer about the existence of a subpoena, warrant, or court order requiring disclosure of records associated with their account. Providers might otherwise disclose the existence of the subpoena, warrant or court order pursuant to their internal policies, although nothing in the statute requires them to do so. *See* 18 U.S.C. § 2703. To obtain such an order, the government must show that notification will result in seriously jeopardizing an investigation or unduly delaying a trial, or other harmful effects described by the statute. *See* 18 U.S.C. § 2705(b). The order may preclude notice for "such period as the court deems

appropriate." Id. Thus, the order precludes providers, not the government, from disclosing the existence of the subpoena, order, or warrant for a period to be determined by the court.

22. Section 2705(b), in contrast, allows the court to enter an order delaying the government's notification obligations "under section 2703(b) of this title," for periods of no more than ninety days at a time. Section 2703(b) requires the government to provide subscribers prior notification only in certain circumstances. Specifically, it requires such notification only where the government seeks content of electronic communications *pursuant to subpoena or court order*. It does not impose notification requirements on providers. It does not require government notification of *search warrants* seeking content of electronic communications. Nor does it require government notification of subpoenas or court orders that seek *historical records or other non-content information of electronic communications*. In fact, the statute explicitly provides that notification of such legal process is *not required*. *See* 18 U.S.C. § 2703 (b)(1)(A) (authorizing disclosure of content of electronic communications pursuant to search warrant "without required notice to the subscriber"); 18 U.S.C. § 2703(c)(1) and (3) (authorizing disclosure of "record[s] or other information pertaining to a subscriber to or customer of such a service (not including contents of communications)" and directing that the government is "not required to provide notice to a subscriber or customer").

23. Here, an accompanying order of non-disclosure would be appropriate because the proposed 2703(d) order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation and its disclosure may alert the targets to the ongoing investigation. Furthermore, there is reason to believe that notification of the existence of the order will seriously jeopardize the investigation—providing targets and bad

actors an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, or change patterns of behavior. *See* 18 U.S.C. § 2705(b). Moreover, some of the evidence in this investigation is stored electronically on media devices or uploaded to cloud services. If alerted to the existence of the order the targets/subjects under investigation could hide or destroy that electronic evidence.

## REQUEST TO SEAL

24. The United States further requests that the Court order that this application, supporting documentation and or resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By:   s/Mary Lauren Melton
Assistant U. S. Attorney
260 West Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 233-2661
Mary.Melton@usdoj.gov